**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEXINGTON LUMINANCE LLC, *Plaintiff*, v. BULBRITE INDUSTRIES, INC., *Defendant*. | Civil Action No. 22-3787  **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This case concerns Defendant Bulbrite Industries, Inc.'s ("Bulbrite") alleged infringement of Plaintiff Lexington Luminance LLC's ("Lexington") patent. Currently pending before the Court is Defendant's motion to dismiss Plaintiff's Complaint. D.E. 7. The Court reviewed the parties' submissions,[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, the motion is **GRANTED**.

---

[1] Defendant's brief in support of its motion will be referred to as "Def. Br." (D.E. 7-1); Plaintiff's opposition will be referred to as "Plf. Opp." (D.E. 15); and Defendant's reply will be referred to as "Def. Reply" (D.E. 16).

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[2]

Lexington is the owner of U.S. Patent No. 6,936,851 (the "'851 Patent"), entitled "Semiconductor Light-Emitting Device and Method for Manufacturing the Same." Compl. ¶ 7. The United States Patent and Trademark Office (the "PTO") originally issued the '851 Patent on August 30, 2005, and then reissued the patent on December 5, 2014, after an *ex-parte* reexamination. *Id.* ¶¶ 7-8; Ex. 1 (D.E. 1-2).[3] The reissued patent remains valid and enforceable and sets out 18 claims. *Id.* ¶ 9; Ex. 1.

The '851 Patent teaches an improvement in the manufacturing of semiconductor light-emitting devices ("LEDs"). *See* Ex. 1 at 11, col. 1, ll 8-10.[4] LEDs generally consist of materials deposited on a base material known as a substrate. When the substrate material and the deposited layer material have different crystal structures that are incompatible in their atomic arrangements, a lattice mismatch may occur. *Id.* at 11, col. 1, ll. 18-22; *see also* Def. Ex. 5 at 39-40. A lattice

---

[2] The factual background is taken from Plaintiff's Complaint, D.E. 1 ("Compl."). When reviewing a motion to dismiss for failure to state a claim, a court accepts as true all well-pleaded facts in the Complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A court may also consider any document integral to or relied upon in a complaint and take judicial notice of public records, such as prosecution history available on the U.S. Patent & Trademark Office's Public PAIR site. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see also Genetic Techs. Ltd. v. Bristol-Myers Squibb Co.*, 72 F. Supp. 3d 521, 526 (D. Del. 2014), *aff'd sub nom. Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369 (Fed. Cir. 2016) (citations omitted) ("A court may also take judicial notice of the prosecution histories, which are 'public records.'"); *Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890, 898 n.3 (Fed. Cir. 2019) ("The prosecution history is part of the intrinsic record of the patent" and "thus subject to judicial notice and may be considered in our de novo review of the district court['s]" ruling on a motion to dismiss).

[3] The Court's citations to "Ex. __" correspond to the exhibits to Plaintiff's Complaint. *See* Ex. 1–16 (D.E. 1-2–1-17). The Court's citations to "Def. Ex. __" correspond to the exhibits to Defendant's brief and reply in support of this motion. *See* Def. Ex. 1–11 (D.E. 7-3–7-11; D.E. 16-2–16-3). All page numbers cited correspond with those in the ECF header.

[4] Exhibit 1 includes the originally issued patent and the reissued patent, thus certain column numbers appear more than once. For clarity, the Court includes the ECF page number in addition to the column and line numbers when citing to the '851 Patent.

2

mismatch creates a strain where the materials meet, which generates structural defects, also known as lattice defects. Ex. 1 at 11, col. 2, 3-6; Def. Ex. 5 at 40. These defects multiply and propagate into the light-emitting active layer, resulting in premature degradation of the LED. *See* Ex. 1 at 11, col. 2, ll. 6-8; Def. Ex. 5 at 40.

The '851 Patent offers a solution to the lattice mismatch problem by using a substrate with a "textured district defined on the surface of said substrate" to direct lattice defects to the sides and thus reduce the defect density in the active layer. Ex. 1 at 12 col. 3, ll. 33-35; Def. Ex. 5 at 40. The textured district is comprised of "a plurality of etched features such as trenches and mesa having a smooth rotation of microfacets" without a prescribed angle of inclination. Ex. 1 at 11–12, col. 2, ll. 22-25, col. 3, ll. 35-49. A "first layer [is] disposed on said textured district," and this first layer is comprised of "a plurality of inclined lower portions," "whereby said plurality of inclined lower portions are configured to guide extended lattice defects away from propagating into the active layer." Ex. 1 at 18, col. 1, ll. 31-43. The first layer also has "a light-emitting structure containing an active layer" disposed on it. *Id.* at 18, col. 1, ll. 39-40.

The patent provides several cross-sectional views to demonstrate how embodiments of "trenches having a sloped etching profile" guide dislocations to designated locations and reduce defects in the active (top) layer of the LED, including Figures 1C, 2A, and 2B.



Fig. 1C    Fig. 2A



Fig. 2B

*Id.* at 4-5.

Lexington alleges that Bulbrite "has infringed and/or continues to infringe" at least claim 1 of the '851 Patent by "among other things, making, using, offering for sale, selling, and/or importing light-emitting diode ('LED') lighting products containing LEDs that infringe the '851 Patents (the 'Accused Products')." *Id.* ¶ 11.

Claim 1 reads as follows:

1. A semiconductor light-emitting device comprising:

    a substrate;

    a textured district defined on the surface of said substrate comprising a plurality of etched trenches having a sloped etching profile with a smooth rotation of microfacets without a prescribed angle of inclination;

    a first layer disposed on said textured district; comprising a plurality of inclined lower portions, said first layer and said substrate form a lattice mismatched misfit system, said substrate having at least one of a group consisting of group III-V, group IV, group II-VI elements and alloys, ZnO, spinel and sapphire; and

    a light-emitting structure containing an active layer disposed on said first layer, whereby said plurality of inclined lower portions are configured to guide extended lattice defects away from propagating into the active layer.

Ex. 1 at 18, col. 1 l. 25 – col. 2 l. 42.

The "Accused Products" include, but are not limited to, those identified by Lexington in the exemplary charts submitted with its Complaint. *Id.* ¶ 12; *see* Ex. 2–16 (D.E. 1-2–1-17).[5] Lexington alleges that since on or around July 26, 2019, Bulbrite has been aware of the '851 Patent, and has had actual notice and knowledge of its infringement of the '851 Patent, based on a letter that Lexington sent to Bulbrite. *Id.* ¶¶ 15, 17; *see also* Def. Ex. 7 (D.E. 7-9). Lexington also alleges that Bulbrite has had knowledge of the '851 Patent and its alleged infringement of the patent since at least June 14, 2022, when Lexington's Complaint was filed. *Id.* ¶ 16.

The Complaint asserts claims of direct infringement, induced infringement, and willful infringement. On August 19, 2022, Bulbrite filed the instant motion.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain enough factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[5] The exemplary charts include the following Accused Products: Bulbrite 770586 JC 2W 12V G4 Base (Ex. 2, D.E. 1-3); Bulbrite 770591 T6 4.5W LED G9 2700K (Ex. 3, D.E. 1-4); Bulbrite 770606 T8 6W LED Linear Lamp 2700 (Ex. 4, D.E. 1-5); Bulbrite 772832 BR30 9W LED 4000K (Ex. 5, D.E. 1-6); Bulbrite 773140 7 Inch Flush Mount 15W (Ex. 6, D.E. 1-7); Bulbrite 773221 6 Inch Recessed Downlight 14W (Ex. 7, D.E. 1-8); Bulbrite 776102 T5 4 Ft 27W 5000K Mini-Bi-Pin (Ex. 8, D.E. 1-9); Bulbrite 776692 ST18 7W LED 2700K Filament (Ex. 9, D.E. 1-10); Bulbrite 776692 ST18 7W LED 2700K Filament (Ex. 10, D.E. 1-11); Bulbrite 776706 G16 2.5W 2700K Filament Candelabra (Ex. 11, D.E. 1-12); Bulbrite 776763 B11 4W 3000K Filament Candelabra (Ex. 12, D.E. 1-13); Bulbrite 776814 A19 9W LED 3000K Filament (Ex. 13, D.E. 1-14); Bulbrite 776865 T9 5W LED 2700K Filament (Ex. 14, D.E. 1-15); Bulbrite 776871 A19 2.5W LED Filament 2700K Dimmable (Ex. 15, D.E. 1-16); and Bulbrite 776897 G40 8.5W LED 2700K Filamen (Ex. 16, D.E. 1-17).

for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (citation omitted). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

In the patent infringement context, "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corporations of America*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).[6] While a plaintiff "need not prove its case at the pleading stage," nor plead infringement on an element-by-element basis, "there must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* at 1352-53 (internal quotation marks and citations omitted). The level of detail required to adequately plead infringement will depend on several factors, including

---

[6] Although the Federal Circuit decided *Bot M8* under the laws of the Ninth Circuit, the Third Circuit's pleading standards are not materially different. *See NovaPlast Corp. v. Inplant, LLC*, No. 20-7396, 2021 WL 5770264, at *6 (D.N.J. Dec. 6, 2021) (applying the pleading standard guidance from *Bot M8*).

6

"the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.* at 1353.

### III.  ANALYSIS

Bulbrite argues that Lexington's direct infringement claim should be dismissed for failure to adequately plead the presence of two key claim elements: (1) "an active layer disposed on said first layer;" and (2) "whereby the plurality of inclined lower portions are configured to guide extended lattice defects away from propagating into the active layer." Def. Br. at 10-11.  To state a claim for direct infringement under 35 U.S.C. § 271, the "plaintiff must list the defendant's products that allegedly infringe, describe the alleged infringement, and relate factual assertions to the pertinent claims in its patent." *Miller Indus. Towing Equip. Inc. v. NRC Indus.*, 582 F. Supp. 3d 199, 203 (D.N.J. 2022) (internal quotation marks and citations omitted).  The plaintiff must also plausibly allege that the accused product infringes on each and every element (or limitation) of at least one claim of the asserted patent. *Id.* at 203-04.

Turning to the first element at issue—"an active layer disposed on said first layer"—Lexington recites the claim language, alleging that "an active layer is disposed on said first layer" of each Accused Product, and cites to an article that was published in 2002, which states that in "[t]he bulk of commercially available GaN-based devices," "GaN layers are grown on the substrate, [and] an active layer is grown on top of this." *See, e.g.*, Ex. 3 at 18; *see also* Ex. 2-16.[7] Bulbrite argues that these allegations are insufficient because they fail to (1) identify an active layer in any of the Accused Products; and (2) plead facts to support the inference that an active

---

[7] Lexington incorporates these allegations by reference for the following Accused Products: Bulbrite 770586 JC 2W 12V G4 Base (Ex. 2, D.E. 1-3); Bulbrite 776692 ST18 7W LED 2700K Filament (Ex. 9, D.E. 1-10); Bulbrite 776706 G16 2.5W 2700K Filament Candelabra (Ex. 11, D.E. 1-12); Bulbrite 776763 B11 4W 3000K Filament Candelabra (Ex. 12, D.E. 1-13).

layer is disposed on the structures identified as the "first layer" in any of the Accused Products. Def. Br. at 10; Def. Reply at 8-9.  Bulbrite adds that Lexington's citation to the 2002 article does not make its allegations plausible because the "Complaint does not plead that the [A]ccused [P]roducts were commercially available 20 years ago, that commercially available devices in 2022 include the same arrangement of structures as those sold twenty years ago, or that each Accused Product falls under such category of 'commercially available GaN-based devices.'"  Def. Br. at 10.  Moreover, Bulbrite contends that even if the Court infers that the article describes the Accused Products, the pleadings remain insufficient as to the positioning of the "active layer" on "said first layer." Def. Br. at 10.  Lexington counters that the Accused Products necessarily have an active layer because an active layer is found in all light bulbs that use LEDs,[8] and takes the position that the journal article and diagram satisfy the "active layer disposed on said first layer" claim element. Plf. Opp. at 8-10.  Lexington also asks the Court to disregard Bulbrite's argument that the article does not apply to present-day LEDs, stating that the article's purpose is to "simply explain Lexington's allegations" and "theory of infringement."  Plf. Opp. at 10.

With respect to the second claim element at issue —"whereby a plurality of inclined lower portions are configured to guide extended lattice defects away from propagating into the active layer"—Lexington recites the claim language and provides the image that it used to allege

---

[8] In support, Lexington cites to a stipulated construction in a separate infringement case and *dicta* from an opinion in another case.  *See* Plf. Opp. at 8 (citing Ex F. (D.E. 15-8), Ex. G (D.E. 15-9)). While the Court may take judicial notice of published opinions, the Court agrees with Bulbrite that these opinions, which involve different defendants and accused products, cannot fill in the factual gaps in Plaintiff's complaint.  Def. Reply at 9; *see also S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) (citations omitted) ("[O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to a reasonable dispute over its authenticity.").

infringement of the "first layer has a plurality of inclined lower portions" element, this time adding two arrows to the image, each pointing toward an inclined lower portion.



The first layer has a plurality of inclined lower portions configured to guide extended lattice defects away from propagating into the active layer.

Plaintiff contends that the inclined lower portions of the first layer disposed on the textured district used in Defendant's LEDs are configured to guide extended lattice defects away from propagating into the active layer.

Ex. 3 at 20; *see also* Ex. 2-16.[9]

Bulbrite argues that these pleadings are insufficient because Lexington "merely parrot[s]" the claim language and asserts that the Accused Products have these elements, without pleading any facts to support its allegations. Def. Br. at 11. Bulbrite adds that these omissions of fact are "particularly egregious" in light of Lexington's failure to plead the presence of an "active layer," making it even less reasonable to infer that "lattice defects" are indeed guided "away from propagating into the active layer." *Id.* Lexington responds that Bulbrite incorrectly treats the "plurality of inclined lower portions" and the "configured to guide" phrases as separate limitations and contends that the "configured to guide" term merely modifies the "inclined lower portions structure," thus Lexington need not do more than "identif[y] the structure" and allege that it is "shaped to reduce the propagation of extended lattice defects into the active layer." Plf. Opp. at 10-11.

---

[9] Lexington incorporates these allegations by reference for the following Accused Products: Bulbrite 770586 JC 2W 12V G4 Base (Ex. 2, D.E. 1-3); Bulbrite 776692 ST18 7W LED 2700K Filament (Ex. 9, D.E. 1-10); Bulbrite 776706 G16 2.5W 2700K Filament Candelabra (Ex. 11, D.E. 1-12); Bulbrite 776763 B11 4W 3000K Filament Candelabra (Ex. 12, D.E. 1-13).

The Court agrees with Bulbrite that the pleadings do not adequately allege infringement and thus fall short of sufficiently pleading direct infringement of the '851 Patent. The detail provided in Lexington's allegations is insufficient because the technology is complex and the limitations at issue are material. In addition to the *Bot M8* opinion, this Court also agrees that "a higher level of detail in pleading infringement may—depending on the complexity of the technology—be demanded for elements clearly 'material' to novelty and non-obviousness." *Vervain, LLC v. Micron Tech., Inc.*, No. 21-00487, 2022 WL 23469, at *5 (W.D. Tex. Jan. 3, 2022). Thus, "[i]n cases involving complex technology, a complaint nakedly alleging that the accused product practices the claimed invention's point of novelty will rarely suffice." *Id.*

Based on the prosecution history of the '851 Patent and the '851 Patent itself, the Court finds that the two limitations at issue are material. First, with respect to the "active layer disposed on said first layer" limitation, Lexington added this limitation (among others) during prosecution to obtain allowance for its claims, after its original claim was rejected as lacking sufficient written description and as anticipated over the prior art of record. *See* Def. Ex. 2 at 3-4, 8-11. Lexington also argued during reexamination that its claims were not anticipated or obvious because the prior art references did not teach or suggest "a light-emitting structure containing an active layer disposed on said first layer." Def. Ex. 5 at 10-11, 19-20, 49-51. Thus, merely reciting the language of this limitation and citing to a 20-year-old article, without more, does not suffice given the materiality of this element. The Court agrees with Bulbrite that Plaintiff fails to sufficiently allege that the Accused Products have an "active layer" or an "active layer disposed on said first layer."

With respect to the "whereby said plurality of inclined lower portions are configured to guide extended lattice defects away from propagating into the active layer" limitation, Lexington

does not appear to contest its materiality,[10] nor could it reasonably do so in light of its prior representations to the PTO.  As Bulbrite notes, the patent itself highlights the importance of this limitation in its "Field of Invention" section:

> The present invention relates generally to the fabrication of semiconductor devices such as light-emitting devices in misfit systems.  *In particular*, the *lattice defects are guided to and contained* in designated locations defined by textured districts on the substrate surface.  As a result, *the free propagation of extended defects through the active region is restricted and the overall defect density of the system is reduced*."

Def. Reply at 4 (citing Ex. 1 at 11, col. 1 ll. 6-15 (emphases added)).  Bulbrite adds that Lexington emphasized this limitation as a core point of novelty during post-grant review of the '851 Patent,[11] and that it was cited by the Examiner as a reason for allowance during reexamination.[12]  Moreover, when its claims were challenged in *Inter Partes* Review ("IPR"), Lexington argued that the prior

---

[10] Lexington takes issue with Bulbrite's assertion that this clause allowed for re-issuance of the patent but does not appear to argue that the clause itself (whether in the "whereby" form or the prior "so as to" form) is not material.  *See* Plf. Opp. at 5-6.

[11] *See* Def. Reply at 4 (citing Def. Ex. 10 at 4–5 (D.E. 16-2)), Patent Owner Preliminary Response, *TCL Corp., TCL Multimedia Tech. Holdings, LTD., and TTE Tech., Inc. v. Lexington Luminance LLC v. Menard, Inc.*, IPR 2017-01780, (P.T.A.B. Nov. 8, 2017)) (internal quotation marks and citations omitted) ("The '851 Patent proposes reducing the propagation of those defects by using the substrate member comprising a textured surface district . . . [that] comprises a plurality of smooth trenches without a prescribed angle of inclination. As the inclined growth proceeds, the extended defects such as misfit dislocation are guided to designated locations and the overall defect density in the misfit system is reduce."); *see also* Def. Ex. 5 at 8 (D.E. 7-7), Patent Owner Submission in Response to Office Action, Reexamination Application No. 90/012,964 (May 14, 2014) ("Claim 1 was also amended to more particularly point out that the plurality of inclined lower portions of layer 1 guide extended lattice defects away from propagating into the active layer.").

[12] *See* Def. Reply at 5 (citing Def. Ex. 11 at 5–6 (D.E. 16-3)), Notice of Intent to Issue *Ex Parte* Reexamination Certificate, Reexamination Application No. 90/012,964 (Oct. 31, 2014)) ("There is not taught or suggested in the prior art 'a plurality of etched trenches having a sloped etching profile with a smooth rotation of microfacets without a prescribed angle of inclination' as recited in claims 1, 3 . . . so that the plurality of inclined lower portions of the overlying first layer guiding extended lattice defects away from propagating into the active layer.").

11

art could not render the claim obvious because while it showed the inclined lower portions, it failed to show the structure's *claimed guiding function*.  Def. Reply at 7-8 (citing Def. Ex. 10 at 4 (D.E. 16-2)), Patent Owner Preliminary Response, *TCL Corp., TCL Multimedia Tech. Holdings, LTD., and TTE Tech., Inc. v. Lexington Luminance LLC v. Menard, Inc.*, IPR 2017-01780, (P.T.A.B. Nov. 8, 2017)). In other words, Lexington argued that the petitioner needed to do more than identify the inclined lower portions in the prior art: they needed to show that the prior art included the claimed "functional" limitation (i.e., the "configured to guide extended lattice defects away from propagating into the active layer" function). *Id.* As a result, Lexington cannot now sufficiently plead infringement by merely identifying the inclined lower portions without pleading facts sufficient to infer the claimed guiding function. In Lexington's own words, its current allegations only demonstrate why the Accused Products practice prior art. *See id.* (distinguishing its claim from prior art based on the claimed guiding function); *see also Vervain*, 2022 WL 23469 at *5 (quoting *Bot M8,* 4 F.4th at 1353) ("A plaintiff cannot establish 'why it is plausible that the accused product infringes the patent claim,' by merely articulating why it is plausible that the accused product practices the prior art."); *see also Grecia Estate Holdings LLC v. Meta Platforms, Inc.*, 21-677, 2022 WL 2019296, at *6, (W.D. Tex. June 6, 2022) (finding the plaintiff's allegations inadequate to plausibly plead infringement because they contradicted prior statements that the plaintiff made to the Patent Trial and Appeal Board during post-grant review of the patent). Therefore, the Court also agrees with Bulbrite that Plaintiff fails to sufficiently allege that the Accused Products have a "plurality of inclined lower portions [] configured to guide extended lattice defects away from propagating into the active layer."

The Court also finds the level of detail here insufficient given the complexity of the technology, which concerns LEDs with a particular structure and chemical composition. *See*

12

*Lexington Luminance LLC v. Serv. Lighting & Elec. Supplies, Inc.*, No. 18-01074, 2018 WL 10425908, at *2 (N.D. Tex. Oct. 9, 2018) (in a case alleging infringement of Lexington's '851 Patent, finding that "the technology at issue is a complicated technology" and thus that the court could not infer from the plaintiff's conclusory allegations that the accused device met the limitations of the asserted claims); *see also NovaPlast Corp. v. Inplant, LLC*, No. 20-7396, 2021 WL 5770264, at *7 (D.N.J. Dec. 6, 2021) (finding a visual comparison adequate to provide a sufficient basis for the infringement claims in a case involving "the basic concept of a funnel," while recognizing that "a photograph with arrows might well fall short of the *Twombly/Iqbal* standard" if the patented invention were more complicated).

Therefore, based on the materiality of the limitations at issue and the complexity of the technology, the Complaint fails to sufficiently plead a direct infringement claim. Because the Complaint fails to plausibly allege direct infringement, Lexington's claims for induced infringement and willful infringement also fail. *See NovaPlast Corp. v. Inplant, LLC*, No. 20-7396, 2021 WL 389386, at *8 (D.N.J. Feb. 3, 2021) (dismissing the inducement and willful infringement claims because the plaintiff failed to plausibly allege direct infringement (citations omitted)); *see also Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004) ("'Liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement.' There can be no inducement or contributory infringement without an underlying act of direct infringement." (quoting *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993))); *Otsuka Pharm. Co. v. Zydus Pharm. USA*, 151 F. Supp. 3d 515, 520 (D.N.J. 2015) (internal quotation marks and citations omitted) ("In order to state a claim for inducement, the patent owner must therefore allege direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage

13

another's infringement. In other words, [the plaintiff's] theory of induced infringement will be plausible if, but only if, [the plaintiff] alleges direct infringement[.]").

## IV. CONCLUSION

Defendant's motion to dismiss, D.E. 7, is **GRANTED**. Plaintiff's claims are dismissed without prejudice to allow Plaintiff an opportunity to file an amended pleading which cures the deficiencies noted herein. Plaintiff has thirty (30) days to file an amended complaint, and if it does not do so, this matter will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: January 10, 2023

                                                                              John Michael Vazquez, U.S.D.J.